FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

AUG - 7 2012

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RALPH COUNTRYMAN | |
| Plaintiff, | 3:11-cv-00852-ECR-VPC |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| JACK PALMER, et al., | August 6, 2012 |
| Defendants. | |

This Report and Recommendation is made to the Honorable Edward C. Reed, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for a preliminary injunction (#3).[1] Defendants opposed (#21) and plaintiff did not reply. The court has thoroughly reviewed the record and recommends that plaintiff's motion for a preliminary injunction be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Ralph Countryman ("plaintiff") is a *pro se* inmate at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#14). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983 and alleges violations of his rights under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *Id.* Pursuant to 28 U.S.C. § 1915A, the court screened the complaint and permitted the following claims in counts I, II, III, and IV to proceed (#4).

In count I, plaintiff alleges that Kairos Prison Ministries ("Kairos"), a Christian organization, applied to defendants to conduct a three-day event at NNCC (#14, p. 5). Plaintiff further claims that the defendants denied the application and stated that they did not have the money to pay the prison

---

[1] Refers to the court's docket number.

staff needed to supervise the event. *Id.* Plaintiff states that defendants rejected Kairos's offer to pay for the time that the staff would work to supervise the event. *Id.* at 6. Plaintiff has stated claims under the First Amendment and RLUIPA (#4).

In count II, plaintiff alleges that the cancellation of the three-day religious event is inconsistent with other NNCC practices, because they pay for prison staff to supervise Hanukkah ceremonies and because policy allows for organizations to pay the costs of supervising religious events (#14, pp. 8-9). Plaintiff has stated a claim under the Fourteenth Amendment Equal Protection Clause and RLUIPA (#4, pp. 1-2).

In count III, plaintiff alleges that defendants require that a volunteer be present at religious ceremonies (#14, p. 10). Plaintiff claims that he is unable to attend any Episcopalian ceremonies over the weekend because no volunteers are available. *Id.* Plaintiff further alleges that defendants have turned away, threatened, or revoked the status of volunteers, in retaliation for his prior civil rights actions. *Id.* at 10-11 Plaintiff has stated a claim under the First Amendment and RLUIPA (#4, p. 2).

In count IV, plaintiff alleges that defendants apply the requirement of the presence of a volunteer inconsistently, because they do not require a volunteer be present for Native American and Pagan religious ceremonies (#14, p. 12). Plaintiff has stated a claim under the Fourteenth Amendment Equal Protection Clause and RLUIPA (#4, p. 2).

Plaintiff filed the instant motion on December 13, 2011 (#3). In his motion, plaintiff requests a mandatary injunction "requiring the impoundment of all federal funds acquired and or expended by the Nevada Department of Corrections since April 1, 2010, or in the alternitive [sic] the restoration of the religious programs at Northern Nevada Correctional Center to those in place on September 1, 2009." *Id.* at 1.

Defendants oppose and argue that plaintiff is not likely to succeed on the merits of his claims, has not demonstrated a strong likelihood of irreparable injury, and the balance of hardships does not tip in his favor (#21). Defendants also argue that plaintiff's request that the court impound all federal funds that NDOC received for the past two years bears no relation to the alleged harm

plaintiff seeks to correct. *Id.* at 15. Lastly, defendants assert that plaintiff's request for injunctive relief is not narrowly tailored to the specific claims at issue in plaintiff's complaint. *Id.*

Defendants submit NDOC Administrative Regulation ("AR") 810 which governs religious faith group activities and programs and the NDOC religious practice manual. *Id.* at Ex. A. Defendants provide NNCC Associate Warden Elizabeth Walsh's declaration which recounts the events which occurred during the Kairos Prison Ministries three-day event in 2009. *Id.* at Ex. B. Defendants also submit the NNCC chapel schedules. *Id.* at Ex. C.

The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Preliminary Injunction Legal Standard

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 688-90 (2008) (citations and quotation omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 21 (2008) (citation omitted). The instant motion requires that the court determine whether plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 19 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 622 F.3d. 1045, 1049-50 (9th Cir. 2010); *see also Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter*,

3

the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting) ("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high . . . This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 622F.3d. at 1049. In light of the *Winter* decision, however, the Ninth Circuit has indicated, "[t]o the extent our cases have suggested a lesser standard, they are no longer controlling, or even viable." *Am. Trucking Assocs. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). Accordingly, plaintiff is required to make a showing on all four of the preliminary injunction requirements.

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, Section 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) . . . operates simultaneously to restrict the equity jurisdiction of federal

courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

**B.     Analysis**

Plaintiff seeks an order requiring the impounding of all federal funds acquired or expended by NDOC since April 1, 2010, or requiring the restoration of the religious programs at NNCC which were in place prior to September 1, 2009 (#3). Defendants argue that plaintiff has not made a sufficient showing on the required elements for preliminary injunctive relief (#21).

As an initial matter, the court agrees with defendants that plaintiff's request that federal funds be impounded is not related to alleged harm he seeks to correct. The Supreme Court has held that a preliminary injunction is appropriate to grant relief of the "same character as that which may be granted finally." *De Beers Consol. Mines v. U.S.*, 325 U.S. 212, 220 (1945). The court will not address this request due to procedural deficiencies. Plaintiff claims that the cancellation of a three-day event violated his First and Fourteenth Amendment rights and his rights under RLUIPA. Plaintiff's request to restore all religious programs to those which were in existence on September 1, 2009, is overbroad and does not comport with the PLRA's mandate to design injunctive relief that is the least intrusive means necessary to address the harm and is "narrowly drawn." Nevertheless, the court analyzes whether plaintiff has met the requirements for a preliminary injunction related to his request that all religious programs at NNCC be restored to those in place in September 2009.

**1. Likelihood of Irreparable Harm**

"Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 21. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "Courts generally look at the immediacy of the threatened injury in determining whether to grant preliminary injunctions." *Privitera v. Cal. Bd. of Med. Quality*

*Assurance*, 926 F.2d 890, 897 (9th Cir. 1991).

Plaintiff argues he will suffer irreparable injury because he has missed more than twenty services and cannot remember the last time he received communion (#3, pp. 4-5). A court need not consider claims that were not raised in the complaint. *McMichael v. Napa County*, 709 F.2d 1268, 1273 n.4 (9th Cir. 1983). Additionally, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). Plaintiff's pending lawsuit includes claims related to NDOC's cancellation of the Kairos three-day event and the requirement that group worship be supervised (#14). Plaintiff does not link the allegations in his complaint to the irreparable harm he discusses in his motion.

Further, plaintiff practices his Episcopal religion freely by attending group worship throughout the week (#21, Ex. C). Plaintiff may also pray, study, and possess religious property. *Id.* at Ex. A, p. 34. Courts have rejected the view that prison personnel are obligated, under RLUIPA, to provide group services when inmates request them. *See Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2009), *cert. denied*, 5454 U.S. 1104 (2005) (holding that the prison did not impose a substantial burden on his religious exercise by not accommodating his request to congregate with other members of his faith). Plaintiff has not demonstrated that he will suffer irreparable injury if the court does not order NDOC to restore all religious programs at NNCC to those in place in 2009.

**2. Likelihood of Success on the Merits**

**a. First Amendment**

To succeed on the merits of his claims under the First Amendment, plaintiff must show that defendants have burdened the practice of his religion without a justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008). "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). A

prisoner's right to free exercise of his or her religion is necessarily limited by incarceration, and may be curtailed to achieve legitimate correctional goals or to maintain prison security. *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam). To implicate the Free Exercise Clause, a belief must be "sincerely held" and "rooted in religious belief." *See Shakur*, 514 F.3d at 885 (holding that the sincerity test set forth in *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994), and *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981), determines the applicability of the Free Exercise Clause).

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Shakur*, 514 F.3d at 883-84 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Under *Turner*, the court must balance four factors in determining whether a prison regulation is reasonably related to legitimate penological interests. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89. Second, the court must determine whether there are "alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. Third, the court must consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* Fourth, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.* Even if defendants' cancellation of the religious event or requirement that group worship be supervised burdened plaintiff's practice of his religion, plaintiff fails to show that there is no justification reasonably related to legitimate penological interests.

The first *Turner* factor requires determining whether there is a legitimate penological interest that is rationally related to the disputed regulation. Defendants submit NNCC Associate Warden Elizabeth Walsh's declaration which discusses the security and safety threat which occurred at the 2009 Kairos three-day event (#21, Ex. B).[2] Kairos volunteers brought wigs to the event and also set up tall dividers in the gym which jeopardized the safety of inmates, staff, and volunteers. *Id.* Due

---

[2] Defendants argue that the cancellation of one specific religious event does not burden plaintiff's right to practice his religion. Nevertheless, defendants analyze the *Turner* factors (#21).

7

to safety concerns, NNCC cancelled the last day of the 2009 event. *Id.* at 1. Thus, while Kairos Ministries may enter NNCC for monthly events and attend the weekly Episcopal services, NNCC determined that the three-day event poses a security and safety risk to inmates and staff. Further, there is a legitimate penological interest in requiring volunteers be present during indoor religious events. As Ms. Walsh states in her declaration, inmates may not gather indoors for group worship without the supervision of either a staff member or approved religious volunteer because of safety risks to inmates and also a risk to the security of the prison. *Id.* at 2.[3] Defendants provide legitimate penological interests for their actions and regulations. This factor favors the defendants.

The second *Turner* factor examines whether plaintiff has "alternative means by which he can practice his religion" or is "denied all means of religious expression." *Shakur*, 514 F.3d at 886. Plaintiff may attend monthly Episcopal events and also weekly Episcopal service (#21, Exs. B, C). Plaintiff may pray, study, and worship in private. *Id.* at Ex. A, p. 34. Plaintiff may also possess approved religious items. *Id.* Despite not having a three-day event and the requirement that a volunteer be present during group worship, plaintiff has alterative means by which he can practice his Episcopalian faith. This factor favors the defendants.

The third *Turner* factor considers the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. As previously discussed, the accommodations which plaintiff requests would have a significant impact on the safety of prison staff and inmates. NNCC has determined that the Kairos three-day event poses a security and safety risk to inmates, volunteers, and staff. Further, allowing inmates to gather for group worship without supervision compromises the safety of prison staff and inmates. This factor favors defendants.

The fourth *Turner* factor requires consideration of whether "there are ready alternatives to the prison's current policy that would accommodate [plaintiff] at *de minimus* cost to the prison."

---

[3] Court have upheld prison requirements that inmate-led group worship be supervised. *See Anderson v. Angelone*, 123 F.3d 1197, 1198-99) (9th Cir. 1997) (upholding a ban on inmate-led religious activity without supervision); *Cooper v. Tard*, 855 F.2d 125, 129 (3rd Cir. 1988) (sustaining regulation prohibiting unsupervised inmate religious activity); *Hadi v. Horn*, 830 F.2d 779, 784-85 (7th Cir. 1987) (finding that cancellation of religious services when outside chaplain not available was reasonable).

8

*Shakur*, 514 F.3d at 887. "[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation," *Washington v. Harper*, 494 U.S. 210, 225 (1990), while the existence of alternatives may be "evidence that the [policy] is not reasonable but is an 'exaggerated response' to prison concerns." *Turner*, 482 U.S. at 90-91. NNCC permits Kairos Prison Ministries to come to NNCC and sponsor weekly and monthly Episcopal services (#21, Ex. C). However, there is no ready alternative to the requirement that inmates be supervised during times of group worship. For the foregoing reasons, plaintiff is not likely to succeed on the merits of his First Amendment claims.

Plaintiff has not shown he is likely to succeed on the merits of his First Amendment claims because he does not show that defendants' actions are not rationally related to legitimate government interests. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Finally, the Supreme Court has held that it is not a First Amendment violation if a plaintiff is unable to attend certain prayer services but is free to participate in other religious ceremonies and practices. *See O'Lone*, 482 U.S. at 351-52.

### b. RLUIPA

To establish an RLUIPA violation, plaintiff must show that the defendants imposed a substantial burden on his religious exercise. *See Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). Once plaintiff shows a substantial burden on his exercise of religion, defendants must prove that the burden both furthers a compelling governmental interest and is the least restrictive means of achieving that interest. *Id.* at 995. Although RLUIPA does not define "substantial burden," the Ninth Circuit has stated that a substantial burden is one that is "'oppressive' to a 'significantly great' extent" and "a 'substantial burden on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier*, 418 F.3d at 995 (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). The burden need not concern a religious practice that is compelled by, or central to, a system of religious belief, *see* 2000cc-5(7)(A); however, the burden must be more than an inconvenience. *Navajo Nation v. U.S. Forest Serv.*, 479 F.3d 1024, 1033 (9th Cir. 2007), *aff'd en banc*, 535 F.3d 1058, 1068 (9th Cir. 2008) (internal quotations and citations omitted). A burden is substantial under RLUIPA when the state, "denies [an important benefit] because of conduct mandated by religious belief, thereby putting

substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Shakur*, 514 F.3d at 888 (quoting *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981) (internal quotations omitted)).

Plaintiff fails to show that cancellation of the Kairos three-day event substantially burdens his practice of religion. Plaintiff also fails to show that cancellation of one religious event prevents him from "engaging in religious conduct or having a religious experience." *Navajo Nation*, 535 F.3d at 1091. Plaintiff wholly fails to explain how the requirement that group worship be supervised substantially burdens his exercise of religion. Plaintiff repeatedly states that "defendants have not and cannot explain" their actions; however, it is plaintiff's burden to prove that the defendants' actions substantially burden his exercise of religion (#3, p. 3). Plaintiff fails to do so.

### c. Fourteenth Amendment Equal Protection Clause

Lastly, under the Equal Protection Clause, plaintiff must show that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). Plaintiff must show evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976). Plaintiff alleges that NNCC allegedly pays for supervision of Hanukkah ceremonies over an eight-day period but refuses to pay for supervision of the three-day Kairos event. Plaintiff further claims that NNCC requires that plaintiff's group worship be supervised but Native American and Pagan religious ceremonies are conducted without supervision by a volunteer (#14, p. 9; #3, p. 3).

Plaintiff does not address his equal protection claims in discussing the requirements for preliminary injunctive relief. Plaintiff does not provide evidence that defendants cancelled the Kairos event and required a volunteer at group worship with the discriminatory intent to interfere with and substantially burden his religious exercise. In fact, plaintiff has been provided a reasonable opportunity to pursue his Christian Episcopalian faith and there is no evidence of intentional discrimination. Inmates such as plaintiff who wish to practice their religion indoors need supervision (#21, Ex. B, p. 2). On the other hand, Native American and Pagan religions gather outdoors and staff

10

supervise them through the gun towers. *Id.*

### 3. Balance of Hardships

The balance of hardships does not tip sharply in plaintiff's favor. Issuance of any preliminary injunctive relief would require this court to significantly interfere with the internal processes of the NDOC. Further, plaintiff's request would compromise the risks to the safety and security at NNCC. Given that the court must accord "substantial weight" to the effects of injunctive relief on the operation of the prison, the court finds that the balance of hardships favors the defendants. *See* 18 U.S.C. § 3626(a)(2).

### 4. Public Interest

Here, the public is not served where the court's order would compromise the safety and security of the prison, or where resolution of the instant lawsuit will provide adequate relief to the inmate. Further, the court is not in a position to decide security decisions in prisons. *See Turner*, 482 U.S. at 89 (holding that the courts should not subject security-related judgments of prison officials to strict scrutiny). Therefore, plaintiff's motion for a preliminary injunction should be denied.

## III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not sufficiently shown that he meets the requirements for the granting of a preliminary injunction. Nor has plaintiff presented any serious questions as to the merits of his claim. As such, the court recommends that plaintiff's motion for a preliminary injunction (#3) be **DENIED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal

pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for a preliminary injunction (#3) be **DENIED**.

**DATED:** August 6, 2012.

*[signature]*

UNITED STATES MAGISTRATE JUDGE